**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAVANELLO SIMONA,<br><br>                              Plaintiff,<br><br>vs.<br><br>APPLIED GENETIC TECHNOLOGIES CORPORATION, BILL ALISKI, YEHIA HASHAD, ED HURWITZ, SCOTT KOENIG, JIM ROBINSON, JAMES ROSEN, ANNE VANLENT, and SUE WASHER,<br><br>                              Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2)  Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Pavanello Simona ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

<u>**SUMMARY OF THE ACTION**</u>

1.      Plaintiff brings this stockholder action against Applied Genetic Technologies Corporation ("AGTC" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Alliance Holdco Limited ("Parent"), an

affiliate of Syncona Limited through merger vehicle Alliance Acquisition Sub, Inc. ("Purchaser") (collectively with "Parent", "Syncona") as a result of an unfair process, and to enjoin an upcoming tender off on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an October 23, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement,  AGTC shareholders will receive $0.34 in cash in exchange for each share of AGTC as well as one Contingent Value Right ("CVR") entitling the holder to an equal share of payments made based on the achievement of 4 separate milestones. As a result, AGTC will become an indirect wholly-owned subsidiary of Syncona.

3.      Thereafter, on October 26, 2022, AGTC filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the Recommendation Statement describes an insufficient process with only one goal in mind – to sell the Company to Syncona.

5.      Notably, the Recommendation Statement fails to disclose whether a committee of disinterested directors was appointed to manage the sales process, and if so, what powers that committee had in reviewing the Proposed Transaction, including whether the committee had the ability to veto a potential transaction that was not in the best interests of shareholders.

6.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder.  For instance, pursuant to the terms of the Merger

Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their AGTC shares in favor of the Proposed Transaction.  The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for AGTC, provided by AGTC to the Company's financial advisors MTS Securities, LLC ("MTS"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by MTS and provided to the Company and the Board. Accordingly, this action seeks to enjoin the Proposed Transaction.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

**PARTIES**

9.      Plaintiff is a citizen of Italy and, at all times relevant hereto, has been a AGTC stockholder.

10.      Defendant AGTC is a clinical-stage biotechnology company developing genetic therapies for people with rare and debilitating ophthalmic, otologic and central nervous system (CNS) diseases. AGTC is incorporated under the laws of the State of Delaware and has its principal

place of business at 14193 NW 119th Terrace, Suite 10, Alachua, Florida, 32165.  Shares of AGTC common stock are traded on the NasdaqGM Stock Exchange under the symbol "AGTC".

11.    Defendant Bill Aliski ("Aliski") has been a Director of the Company at all relevant times.

12.    Defendant Yehia Hashad ("Hashad") has been a director of the Company at all relevant times.

13.    Defendant Ed Hurwitz ("Hurwitz") has been a director of the Company at all relevant times.

14.    Defendant Scott Koenig ("Koenig") has been a director of the Company at all relevant times.

15.    Defendant Jim Robinson ("Robinson") has been a director of the Company at all relevant times.

16.    Defendant James Rosen ("Rosen") has been a director of the Company at all relevant times.

17.    Defendant Anne VanLent ("MacPhee") has been a director of the Company at all relevant times.

18.    Defendant Sue Washer ("Washer") has been a director of the Company at all relevant times.

19.    Defendant Anna S. Richo ("Richo") has been a director of the Company at all relevant times.

20.    Defendants identified in ¶¶ 11 - 19 are collectively referred to as the "Individual Defendants."

21.     Non-Party Syncona Limited is a privately held investment fund centered around the goal of investing to extend and enhance human life.

22.     Non-Party Parent is an affiliate of Syncona Limited created to effectuate the proposed transaction.

23.     Non-Party Purchaser is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

### JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

25.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

27.     AGTC is a clinical-stage biotechnology company developing genetic therapies for people with rare and debilitating ophthalmic, otologic and central nervous system (CNS) diseases. AGTC is designing and constructing critical gene therapy elements and bringing them together to develop customized therapies with the potential to address unmet patient needs. AGTC's most advanced clinical programs in XLRP and ACHM CNGB3 leverage its technology platform to potentially improve vision for patients with inherited retinal diseases. Its preclinical programs build on AGTC's AAV manufacturing technology and scientific expertise. AGTC is advancing multiple pipeline candidates to address substantial unmet clinical needs in optogenetics, otology and CNS disorders, and has entered into strategic collaborations with companies including Bionic Sight, Inc., an innovator in the emerging field of optogenetics and retinal coding, and Otonomy, Inc., a biopharmaceutical company dedicated to the development of innovative therapeutics for neurotology.

28.     The Company's most recent clinical performance press release, revealing results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid operational performance.  For example, in the June 6, 2022 press release announcing its Interim Results from the SKYLINE Clinical Trial of AGTC-501 for the Treatment of X-Linked Retinitis Pigmentosa, the Company highlighted significant progress.

29.     Speaking on these positive results, Chief Medical Officer Susan Schneider commented on the Company's positive financial results as follows, "We are excited to share these data from the Skyline clinical trial with the international ophthalmology community, as we believe

robust improvements in visual sensitivity, along with a favorable safety profile, show great promise for AGTC-501 as a potential treatment for patients with XLRP."

30.     These positive clinical results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by AGTC.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

31.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused AGTC to enter into the Proposed Transaction without providing requisite information to AGTC stockholders such as Plaintiff.

***The Flawed Sales Process***

32.     The Recommendation is materially deficient. The Recommendation Sheet fails to disclose whether a committee of disinterested directors was appointed to run the sale process, and if so, the specific powers that committee had in evaluating a potential transaction.

33.     The Recommendation Statement fails to disclose adequate reasoning as to why the board agreed to uncertain consideration through a CVR rather than additional value for each share.

34.     In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including Syncona, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way.

35.     The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including Syncona, throughout the sales process, if any, would fall away.

36.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

37.     On October 24, 2022, AGTC and Syncona issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **GAINESVILLE, Fla. and CAMBRIDGE, Mass.,** Oct. 23, 2022 (GLOBE NEWSWIRE) -- Applied Genetic Technologies Corporation (Nasdaq: AGTC), a clinical-stage biotechnology company focused on the development and commercialization of adeno-associated virus (AAV)-based gene therapies for the treatment of rare and debilitating diseases with an initial focus on inherited retinal diseases (IRDs), today announced that it has entered into a definitive agreement pursuant to which a newly established portfolio company of Syncona Limited (LON: SYNC), a leading healthcare company focused on founding, building and funding global leaders in life science, will acquire AGTC, through a tender offer, for approximately $23.5 million ($0.34 per share) in cash at the closing of the transaction plus potential future aggregate cash payments of up to $50.0 million (up to $0.73 per share) pursuant to contingent value rights (CVRs). The board of directors of AGTC unanimously recommends that the shareholders of AGTC tender their shares in the tender offer once it is commenced.
>
> "This transaction represents an attractive upfront cash offer to shareholders at a premium of approximately 42% to the current share price, with the potential to receive future upside based on the clinical success of XLRP and other pipeline assets through CVRs," said Dr. Scott Koenig, Chairman of AGTC's board of directors. "Our board and leadership team evaluated all alternative options to progress AGTC-501. Given the state of equity and other funding markets, we see significant challenges in funding ongoing operations beyond 2022. We believe that this transaction clearly will deliver the best value to our shareholders.   AGTC's board of directors has unanimously approved the offer and strongly encourages shareholders to tender their shares."
>
> "Our team has completed groundbreaking work for patients living with devastating retinal diseases," said Sue Washer, President and Chief Executive Officer of AGTC. "This transaction allows continued progress in advancing an important therapy for XLRP patients while also maximizing immediate and potential long-term value to our shareholders. On closing, AGTC will be Syncona's third company focused on retinal gene therapy, and we look forward to transitioning AGTC-501 to Syncona's experienced stewardship with the goal of advancing this differentiated product candidate to patients with XLRP."

"We share AGTC's passion in developing life changing treatments for patients with diseases with no currently approved therapies," said Chris Hollowood, Chief Investment Officer of Syncona Investment Management Limited. "Syncona has significant expertise in AAV gene therapy, and in particular, a strong track record of building retinal gene therapy businesses. We believe AGTC's XLRP program has the potential to be a best-in-class product that could transform the lives of patients suffering with this devastating blinding condition."

Under the terms of the definitive agreement, an indirect subsidiary of Syncona Limited will initiate a tender offer to acquire all outstanding shares of AGTC common stock. The upfront cash consideration in the transaction will consist of $0.34 per share of AGTC common stock (including common stock underlying restricted stock units and in-the-money stock options). AGTC equity holders will also receive in the transaction, for each share of AGTC common stock, one non-tradeable CVR. The holders of the CVRs will be entitled to receive payments of up to an additional $50.0 million in the aggregate upon the achievement of certain milestones related to transactions involving AGTC's assets and regulatory and commercial milestones related to AGTC's products. The $0.34 per share represents a premium of approximately 42% and the potential for up to $1.07 per share (inclusive of the potential CVR value) represents a premium of up to approximately 344% over AGTC's closing stock price on October 21, 2022.

Under the terms of the definitive agreement, any shares not tendered in the tender offer will be acquired in a second-step merger at the same cash price as paid in the tender offer. The closing of the transaction is subject to customary closing conditions, including that the number of shares validly tendered and not validly withdrawn represents a majority of all shares of AGTC common stock then outstanding (treating as outstanding the shares underlying outstanding restricted stock units) plus the aggregate number of shares issuable to holders of stock options and warrants in respect of which AGTC has received notices of exercise prior to the expiration of the tender offer. Upon the closing of the transaction, the shares of AGTC's common stock will no longer be listed on any public market. Subject to certain limited exceptions, the CVRs will be non-transferable. There can be no assurance that any contingent payments will be paid. Syncona plans to finance the upfront cash consideration in the transaction with cash on hand.

The transaction was unanimously approved by AGTC's board of directors and is expected to close in the fourth quarter of 2022. All of the members of AGTC's board of directors and the executive officers of AGTC entered into a tender and support agreement with respect to all of the shares of AGTC common stock and/or stock options held by such persons (representing in the aggregate less than 1% of AGTC's equity), pursuant to which each such person agreed, among other things, to vote against other proposals to acquire AGTC and, subject to certain exceptions, to tender such person's AGTC shares pursuant to the tender offer.

MTS Health Partners, L.P. is acting as financial advisor to AGTC in connection with the transaction. Foley Hoag LLP is acting as legal advisor to AGTC in connection with the transaction. BTIG LLC is acting as financial advisor to Syncona and Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C. is acting as legal advisor to Syncona in connection with the transaction.

### *Potential Conflicts of Interest*

38.     The breakdown of the benefits of the deal indicates that AGTC insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of AGTC.

39.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, the Recommendation Statement fails to account for the specific sums of money in which these shares will be exchanged for:

| Name | Number of Shares | Cash Consideration Payable in Respect of Shares | | Contingent Consideration Payable in Respect of Shares | |
|---|---|---|---|---|---|
| **Executive Officers** | | | | | |
| Susan B. Washer | 143,021 | $ | 48,627 | $ | 104,405 |
| Jonathan I. Lieber | — | $ | — | $ | — |
| Stephen W. Potter | 47,133 | $ | 16,025 | $ | 34,407 |
| Abraham Scaria | — | $ | — | $ | — |
| Susan Schneider, M.D. | — | $ | — | $ | — |
| Hope D'Oyley-Gay | — | $ | — | $ | — |
| **Non-Employee Directors** | | | | | |
| Scott Koenig, M.D., Ph.D. | 34,246 | $ | 11,644 | $ | 25,000 |
| William Aliski, MPA | 8,500 | $ | 2,890 | $ | 6,205 |
| Yehia Hashad | — | $ | — | $ | — |
| Ed Hurwitz | 27,472 | $ | 9,340 | $ | 20,055 |
| James A. Robinson, Jr. | — | $ | — | $ | — |
| James Rosen | 1,000 | $ | 340 | $ | 730 |
| Anne VanLent | — | $ | — | $ | — |

40.    Notably, Company insiders, currently own large, illiquid portions of stock options, restricted share, or other equity award, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction.   Notably, the Recommendation Statement accounts for these holdings as follows:

| Name | Number of Company Options Outstanding | Number of Shares Subject to Contingent Options | Contingent Consideration Payable in Respect of Shares Subject to Contingent Options ($) |
|---|---|---|---|
| *Executive Officers* | | | |
| Susan B. Washer* | 442,000 | 27,625 | 20,166 |
| Jonathan I. Lieber | 154,700 | 9,668 | 7,058 |
| Stephen W. Potter | 133,100 | 8,318 | 6,072 |
| Abraham Scaria | 124,500 | 7,781 | 5,680 |
| Susan Schneider, M.D. | 142,300 | 8,893 | 6,492 |
| Hope D'Oyley-Gay | 147,900 | 9,243 | 6,747 |

| Name | Number of RSUs to Vest as of the Effective Time | Cash Consideration Payable in Respect of Vested RSUs ($) | Contingent Consideration Payable in Respect of Vested RSUs ($) | Total Value ($) |
|---|---|---|---|---|
| *Executive Officer* | | | | |
| Stephen W. Potter | 8,750 | 2,975 | 6,388 | 9,363 |

41.    In addition, certain employment agreements with certain AGTC executives, entitle such executives to significant amounts of money conditioned upon the consummation of the merger and/or their termination.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them significant sums of money, compensation not shared by Plaintiff as follow:

| Name | Cash ($) | Perquisites/Benefits ($) | Total ($) |
|---|---|---|---|
| Susan B. Washer | 717,726 | — | 717,726 |
| Jonathan I. Lieber | 605,696 | 34,729 | 640,425 |
| Susan Schneider, M.D. | 649,740 | 9,680 | 659,42 |

42.     The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

43.     Thus, while the Proposed Transaction is not in the best interests of AGTC, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

44.     On October 26, 2022, the AGTC Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

45.     Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

    a.   Adequate information as to whether a committee of disinterested directors was appointed to lead the sales process and if so, the powers to which they were

authorized in reference to any proposed transaction;

b.  Adequate disclosure as to why the Board agreed to uncertain consideration through a CVR rather than more definite consideration;

c.  Whether the terms of any confidentiality agreements entered during the sales process between AGTC on the one hand, and any other third party (including Syncona), if any, on the other hand, differed from one another, and if so, in what way;

d.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including Syncona) throughout the sales process, if any, would fall away; and

e.  The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning AGTC and Syncona's Financial Projections*

46.  The Recommendation Statement fails to provide material information concerning financial projections for AGTC provided by AGTC management and relied upon by MTS in its analyses.  The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

47.  Notably, in connection with its fairness opinion rendered to the Company Board

regarding the Proposed Transaction, MTS notes that it reviewed, "reviewed certain internal financial analyses and forecasts prepared by and provided to MTS Securities by the management of the Company relating to its business."

48.     The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that AGTC management provided to the Board and MTS. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

49.     With regard to *Certain Projected Information* created by AGTC management, the Recommendation Statement fails to disclose material line items for all projection metrics utilized in MTS analyses:

        a.  XLRP, including the underlying inputs, metrics, and assumptions used to estimate a 60% probability of success;

        b.  ACHMB3, including the underlying inputs, metrics, and assumptions used to estimate a 50.6% probability of success;

        c.  GRN, including the underlying inputs, metrics, and assumptions used to estimate a 6.9% probability of success;

        d.  CFH, including the underlying inputs, metrics, and assumptions used to estimate a 4% probability of success

        e.  C9orf72, including the underlying inputs, metrics, and assumptions used to estimate a 3.9% probability of success;

f.  Otology, including the underlying inputs, metrics, and assumptions used to estimate a 14.5% probability of success; and

g.  A definition for Probability Adjusted Revenue, as well as the inputs, metrics, and assumptions used to calculate this metric for the preceding 6 drug categories.

50.     The Recommendation Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

51.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

52.     Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of MTS's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction.  As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by MTS*

53.     In the Recommendation Statement, MTS describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

54.     With respect to the *Offer Price NPV Calculation.*, the Recommendation Statement

fails to disclose the following:

        a.   The inputs, metrics, and assumptions used to determine a discount rate of 22.0% for Milestones 1-4;

        b.   The company's weighted average cost of capital;

        c.   The inputs, metrics, and assumptions used to determine probabilities of success of 0% for milestone 1, 60% for Milestone 2, 45% for Milestone 3, and 60% for Milestone 4; and

        d.   The specific metrics for each company compared.

55.    With respect to the *Company Valuation Analysis*, the Recommendation Statement fails to disclose the following:

        a.   The assumed aggregate available cash amount provided by the Company.

56.    The Recommendation Statement fails to adequately disclose why an in-depth valuation, such as a *Discounted Cash Flow* or similar analysis, was not conducted.

57.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

58.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public AGTC stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

## FIRST COUNT

### Violations of Section 14(e) of the Exchange Act

### <u>(Against All Defendants)</u>

59.     Plaintiff repeats all previous allegations as if set forth in full herein.

60.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

61.     Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.].

62.     The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

63.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

64.     The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

65.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender

its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

66.     Plaintiff has no adequate remedy at law.

## SECOND COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Defendants)

67.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

68.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

69.     Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

70.     SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

71.     Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

72.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

73.     Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

74.     Plaintiff repeats all previous allegations as if set forth in full herein.

75.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

76.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Recommendation Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

77.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of AGTC' business, the information contained in its filings with the SEC, and its

public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

78.     The Individual Defendants acted as controlling persons of AGTC within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause AGTC to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled AGTC and all of its employees.  As alleged above, AGTC is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: November 2, 2022              **BRODSKY & SMITH**

By:  */s/ Evan J. Smith*
       Evan J. Smith, Esquire (SBN 242352)
       esmith@brodskysmith.com
       Ryan P. Cardona, Esquire (SBN 302113)
       rcardona@brodskysmith.com
       9595 Wilshire Blvd., Ste. 900
       Phone: (877) 534-2590
       Facsimile (310) 247-0160

       *Attorneys for Plaintiff*